Do Not Remove
From Record Room
Nos. 06-51067 & 06-51104

# In the
# United States Court of Appeals
# for the Fifth Circuit

RELIABLE CONSULTANTS INC., DOING BUSINESS AS DREAMERS
AND LE ROUGE BOUTIQUE,

*Plaintiff/Appellant,*

v.

TEXAS ATTORNEY GENERAL GREG ABBOTT;
DISTRICT ATTORNEY RONNIE EARLE,

*Defendants-Appellees.\**

***\*full case caption provided on following page***

---

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

---

## TEXAS ATTORNEY GENERAL GREG ABBOTT'S APPELLEE'S BRIEF

---

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil
Litigation

R. TED CRUZ
Solicitor General

BILL L. DAVIS
Assistant Solicitor General
Texas Bar No. 24028280

JAMES C. TODD
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
[Tel.] (512) 936-1896
[Fax] (512) 370-9191

**ATTORNEYS FOR APPELLEE TEXAS ATTORNEY GENERAL GREG ABBOTT**

U.S. COURT OF APPEALS
RECEIVED
JAN 2 6 2007
NEW ORLEANS, LA.

Nos. 06-51067 & 06-51104

# In the
# United States Court of Appeals
# for the Fifth Circuit

RELIABLE CONSULTANTS INC., DOING BUSINESS AS DREAMERS
AND LE ROUGE BOUTIQUE,

*Plaintiff-Appellant,*

v.

TEXAS ATTORNEY GENERAL GREG ABBOTT;
DISTRICT ATTORNEY RONNIE EARLE,

*Defendants-Appellees.*

---

PHE INC., DOING BUSINESS AS ADAM & EVE INC.,

*· Intervenor Plaintiff-Appellant Intervenor,*

v.

GREG ABBOTT, TEXAS ATTORNEY GENERAL;
RONNIE EARLE, DISTRICT ATTORNEY,

*Defendants-Appellees.*

Nos. 06-51067 & 06-51104

# In the
# United States Court of Appeals
# for the Fifth Circuit

RELIABLE CONSULTANTS INC., DOING BUSINESS AS DREAMERS
AND LE ROUGE BOUTIQUE,

*Plaintiff-Appellant,*

v.

TEXAS ATTORNEY GENERAL GREG ABBOTT;
DISTRICT ATTORNEY RONNIE EARLE,

*Defendants-Appellees.\**

***\*full case caption provided on following page***

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## TEXAS ATTORNEY GENERAL GREG ABBOTT'S APPELLEE'S BRIEF

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil
Litigation

R. TED CRUZ
Solicitor General

BILL L. DAVIS
Assistant Solicitor General
Texas Bar No. 24028280

JAMES C. TODD
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
[Tel.] (512) 936-1896
[Fax] (512) 370-9191

**ATTORNEYS FOR APPELLEE TEXAS ATTORNEY GENERAL GREG ABBOTT**

Nos. 06-51067 & 06-51104

# In the
# United States Court of Appeals
# for the Fifth Circuit

RELIABLE CONSULTANTS INC., DOING BUSINESS AS DREAMERS
AND LE ROUGE BOUTIQUE,

*Plaintiff-Appellant,*

v.

TEXAS ATTORNEY GENERAL GREG ABBOTT;
DISTRICT ATTORNEY RONNIE EARLE,

*Defendants-Appellees.*

---

PHE INC., DOING BUSINESS AS ADAM & EVE INC.,

*Intervenor Plaintiff-Appellant Intervenor,*

v.

GREG ABBOTT, TEXAS ATTORNEY GENERAL;
RONNIE EARLE, DISTRICT ATTORNEY,

*Defendants-Appellees.*

Nos. 06-51067 & 06-51104

# In the
# United States Court of Appeals
# for the Fifth Circuit

RELIABLE CONSULTANTS INC., DOING BUSINESS AS DREAMERS
AND LE ROUGE BOUTIQUE,

*Plaintiff-Appellant*,

v.

TEXAS ATTORNEY GENERAL GREG ABBOTT;
DISTRICT ATTORNEY RONNIE EARLE,

*Defendants-Appellees.*

---

## CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

***Plaintiff-Appellant***
  Reliable Consultants Inc., d/b/a Dreamers and Le Rouge Boutique

***Counsel for Reliable Consultants***
  H. Louis Sirkin
  Jennifer M. Kinsley
  Scott R. Nazzarine
  SIRKIN, PINALES, MEZIBOV & SCHWARTZ
  105 West 4th Street, Suite 920
  Cincinnati, Ohio 45202

**Intervenor Plaintiff-Appellant**
**Intervenor**
   PHE Inc., d/b/a Adam & Eve Inc.

**Counsel for PHE**
   Julie M. Carpenter
   Duane C. Pozza
   JENNER & BLOCK LLP
   601 Thirteenth Street, NW
   Suite 1200 South
   Washington, DC 20005-3823

**Defendants-Appellees**
   Greg Abbott, Attorney General of the State of Texas, in his official capacity[1]
   Ronnie Earle, Travis County District Attorney, in his official capacity

**Counsel for Texas Attorney General Greg Abbott**
   Bill L. Davis, Assistant Solicitor General
   James C. Todd, Assistant Attorney General
   OFFICE OF THE ATTORNEY GENERAL, STATE OF TEXAS
   P.O. Box 12548 (MC 059)
   Austin, Texas 78711-2548

**Counsel for Travis County District Attorney Ronnie Earle**
   Elaine Agnes Casas, Assistant District Attorney
   Jennifer Kraber, Assistant District Attorney
   TRAVIS COUNTY ATTORNEY'S OFFICE
   314 W. 11th Street, Suite 420
   Austin, TX 78701

_____

Bill L. Davis
Attorney of Record for Defendant-Appellee
Texas Attorney General Greg Abbott

---

    1. Before rendering final judgment, the district court altered the style of this case to reflect that the defendant-intervenor was the State of Texas, not Texas Attorney General Greg Abbott, and it ordered the district-court clerk and the parties to reflect that change in their filings. R.354. However, the case caption issued by the Clerk of this Court names Texas Attorney General Greg Abbott as one of the two defendants-appellees. This brief comports with that caption.

## STATEMENT REGARDING ORAL ARGUMENT

This case presents important questions about the doctrines of substantive due process and commercial free speech. The Attorney General believes that oral argument will assist the Court and help clarify the parties' arguments on appeal. Accordingly, the Attorney General agrees with Appellants that this case should be calendared for argument.

# TABLE OF CONTENTS

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xix

Restatement of Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xx

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxi

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    I.    The Statute's Partial Prohibition of the Advertisement and Sale of
        Obscene Devices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    II.    Appellants and Their Business . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    III.    Appellants' Suit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.    Reliable Consultants' Claims Under the United States and
               Texas Constitutions and the Attorney General's Initial
               Dismissal Based on Eleventh Amendment Immunity . . . . . . . 4

        B.    PHE's Intervention to Assert Similar Claims Under the
               United States Constitution and the Attorney General's
               Intervention to Defend the Statute's Constitutionality . . . . . . 5

        C.    Dismissal of Appellants' Suit . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.    Substantive Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.    Commercial Speech ................................. 8

III.   Remaining Claims ................................. 9

Argument ................................................ 9

I.     This Court Reviews the Dismissal of Appellants' Facial and As-
       Applied Challenges to the Statute *De Novo* .................... 9

II.    Appellants Fail to State a Viable Fourteenth Amendment
       Substantive-Due-Process Claim .......................... 11

       A.    The Fourteenth Amendment Does Not Protect Commerce
             in Obscene Devices .............................. 11

             1.    *Lawrence* does not support Appellants' claim ...... 12

             2.    There is no substantive-due-process right to
                   stimulate one's genitals for non-medical purposes
                   unrelated to procreation or outside of an
                   interpersonal relationship ...................... 15

       B.    Alternatively, if Appellants Have Alleged an Actionable
             Fourteenth Amendment Liberty Interest, the Statute
             Survives Rational-Basis Review ...................... 19

             1.    Because Appellants' claim is not based on a
                   fundamental right, strict scrutiny could not apply .... 19

             2.    Rational-basis review applies, and the statute is
                   constitutional under that standard as a matter of
                   law ...................................... 22

                   a.    Several legitimate interests support the
                         statute ............................... 23

                   b.    The statutory prohibition is rationally related
                         to the State's legitimate interests ........... 26

III.  Appellants Fail to State a Viable First Amendment Commercial-
      Speech Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

      A.   The First Amendment Does Not Protect Commercial
           Speech That Relates to Unlawful Obscene-Device Sales . . . 28

           1.   Appellants' speech relates to unlawful activity . . . . . . 30

           2.   Contrary to PHE's argument, the statute restricts no
                speech relating to lawful activity . . . . . . . . . . . . . . . . 31

                a.   Commercial speech necessarily relates to sale,
                     not use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

                b.   Because the statute coextensively prohibits
                     advertising and sale, it does not proscribe any
                     speech related to lawful activity . . . . . . . . . . . 33

                c.   PHE's remaining arguments are meritless . . . . . 36

      B.   Alternatively, Even if Appellants' Speech Relates to Some
           Lawful Activity, the Statute Survives First Amendment
           Scrutiny . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

           1.   The statute serves substantial government interests . . 40

                a.   Settled precedent confirms that the interests
                     behind the statute are substantial . . . . . . . . . . . 40

                b.   PHE would hold the State to an insupportably
                     high standard, and its argument confuses
                     distinct phases of *Central Hudson* analysis . . . . 42

           2.   The statute directly advances the State's interests . . . . 44

           3.   The statute serves the State's interests no more
                extensively than necessary . . . . . . . . . . . . . . . . . . . . . . 47

IV.  The Court Should Either Refuse to Consider or Reject Reliable
     Consultants' Procedural-Due-Process and State Constitutional
     Claims as a Matter of Law .................................. 51

     A.  Appellants Have Waived Their Remaining Claims by
         Failing to Adequately Brief Them ..................... 51

     B.  Regardless, Appellants' Remaining Claims Fail as a Matter
         of Law ............................................... 52

         1.  Appellants' procedural-due-process claim fails
             because §43.23(f) creates a valid rebuttable
             presumption .................................... 52

         2.  Reliable Consultants's commercial-speech and due-
             process claims under the Texas Constitution fail for
             the same reasons that their federal constitutional
             claims fail .................................... 54

Conclusion ..................................................... 55

Certificate of Service ......................................... 57

Certificate of Compliance ...................................... 58

# TABLE OF AUTHORITIES

## Cases

*44 Liquormart, Inc. v. Rhode Island,*
    517 U.S. 484 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Arrington v. County of Dallas,*
    970 F.2d 1441 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54-55

*Ashcroft v. Am. Civil Liberties Union,*
    542 U.S. 656 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 48

*Ashcroft v. Free Speech Coalition,*
    535 U.S. 234 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37

*Bailey v. Morales,*
    190 F.3d 320 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44, 45

*Barnes v. Glen Theatre, Inc.,*
    501 U.S. 560 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Bates v. State Bar of Arizona,*
    433 U.S. 350 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Bd. of Trustees of State Univ. of N.Y. v. Fox,*
    492 U.S. 469 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 41, 47, 49

*Ben's Bar, Inc. v. Vill. of Somerset,*
    316 F.3d 702 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bigelow v. Virginia,*
    421 U.S. 809 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Bowers v. Hardwick,*
    478 U.S. 186 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Brennan v. Stewart,*
    834 F.2d 1248 (5th Cir. 1988) ............................... 52, 54

*Carey v. Population Servs. Int'l,*
    431 U.S. 678 (1977) ................................... 13, 16, 43

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,*
    447 U.S. 557 (1980) ................. 29-32, 39, 40, 43, 44, 46, 47, 49

*Cleburne v. Cleburne Living Ctr.,*
    473 U.S. 432 (1985) ........................................ 23

*Coberly v. Texas,*
    640 S.W.2d 428 (Tex. App.—Fort Worth 1982, pet. ref'd) ............ 53

*Collins v. City of Harker Heights,*
    503 U.S. 115 (1992) ..................................... 12, 15

*County Court of Ulster County,*
    442 U.S. at 156 (1979) ................................... 53, 54

*Cramer v. Skinner,*
    931 F.2d 1020 (5th Cir. 1991) ...................... 29, 39, 46, 50

*Davidson v. City of Clinton,*
    826 F.2d 1430 (5th Cir. 1987) .......................... 24, 40

*Dunagin v. City of Oxford,*
    718 F.2d 738 (5th Cir. 1983) .......................... 35, 37, 45

*Edenfield v. Fane,*
    507 U.S. 761 (1993) ........................................ 44

*Eimann v. Soldier of Fortune Magazine, Inc.,*
    880 F.2d 830 (5th Cir. 1989) ................................ 35

*Energy Mgmt. Corp. v. City of Shreveport,*
    467 F.3d 471 (5th Cir. 2006) ............................. 22-23

*FCC v. Beach Commc'ns, Inc.,*
    508 U.S. 307 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 27

*Fin. Acquisition L.P. v. Blackwell,*
    440 F.3d 278 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 22

*Fla. Bar v. Went For It, Inc.,*
    515 U.S. 618 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 41, 45, 47

*Fleck & Assocs., Inc. v. City of Phoenix,*
    No. 05-15293, 2006 WL 3755201 (9th Cir. Dec. 22, 2006) . . . . . . . . . . . 12

*FM Props. Operating Co. v. City of Austin,*
    93 F.3d 167 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Ford Motor Co. v. Tex. Dep't of Transp.,*
    264 F.3d 493 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31, 38

*Greater New Orleans Broad. Ass'n v. United States,*
    527 U.S. 173 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 44, 47, 49

*Hawkins v. Agric. Mktg. Serv.,*
    10 F.3d 1125 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Heller v. Doe,*
    509 U.S. 312 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hill v. Colorado,*
    530 U.S. 703 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Hosein v. Gonzales,*
    452 F.3d 401 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*L&A Contracting Co. v. S. Concrete Servs., Inc.,*
    17 F.3d 106 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 51

*Lawrence v. Texas,*
    539 U.S. 558 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14, 15, 21, 25, 26

*Leary v. United States*,
    395 U.S. 6 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Lindsay v. City of San Antonio*,
    821 F.2d 1103 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Littlefield v. Forney Indep. Sch. Dist.*,
    268 F.3d 275 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Lofton v. Sec'y of Dep't of Children & Family Servs.*,
    358 F.3d 804 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Loving v. Virginia*,
    388 U.S. 1 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Malagon de Fuentes v. Gonzales*,
    462 F.3d 498 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*MD II Entm't, Inc. v. City of Dallas*,
    28 F.3d 492 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 36, 39, 41, 44, 46

*Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*,
    466 U.S. 789 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Mikeska v. City of Galveston*,
    451 F.3d 376 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Miller v. California*,
    413 U.S. 15 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Montagino v. Canale*,
    792 F.2d 554 (5th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Moore v. Morales*,
    63 F.3d 358 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Morrison v. State*,
    526 S.E.2d 336 (Ga. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nashville, C. & St. L. Ry. v. Walters*,
     294 U.S. 405 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 40

*New Orleans v. Dukes*,
     427 U.S. 297 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Ohralik v. Ohio State Bar Ass'n*,
     436 U.S. 447 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 39

*Paris Adult Theater I v. Slaton*,
     413 U.S. 49 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 41

*People v. Seven Thirty-Five E. Colfax, Inc.*,
     697 P.2d 348 (Colo. 1985) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*PHE, Inc. v. State*,
     877 So. 2d 1244 (Miss. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18, 30

*Pierce v. State*,
     239 S.E.2d 28 (Ga. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
     413 U.S. 376 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Posadas de P.R. Assocs. v. Tourism Co. of P.R.*,
     478 U.S. 328 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 45, 46, 50

*Postscript Enters., Inc. v. Whaley*,
     658 F.2d 1249 (8th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*R.A.V. v. City of St. Paul*,
     505 U.S. 377 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Red Bluff Drive-In, Inc. v. Vance*,
     648 F.2d 1020 (5th Cir. Unit A 1981) . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Regalado v. Texas*,
     872 S.W.2d 7 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) . . . . . . 53

*Reno v. Flores,*
    507 U.S. 292 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Roe v. Wade,*
    410 U.S. 113 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Roth v. United States,*
    354 U.S. 476 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 41

*Sable Commc'ns, Inc. v. FCC,*
    492 U.S. 115 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Simi Inv. Co. v. Harris County,*
    236 F.3d 240 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19, 22, 23

*Skinner v. Oklahoma,*
    316 U.S. 535 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Speaks v. Kruse,*
    445 F.3d 396 (5th Cir. 2006) . . . . . . . . . . . . . . . . 29, 32, 34, 36, 38, 39, 49

*State v. Brenan,*
    772 So. 2d 64 (La. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17, 37

*State v. Hughes,*
    792 P.2d 1023 (Kan. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Stone v. City of Maitland,*
    446 F.2d 83 (5th Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Tex. Manufactured Hous. Ass'n, Inc. v. City of Nederland,*
    101 F.3d 1095 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 40

*Texas v. Johnson,*
    491 U.S. 397 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*This That and the Other Gift & Tobacco, Inc. v. Cobb County,*
    285 F.3d 1319 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 34, 37, 48, 50

*Thompson v. W. States Med. Ctr.*,
    535 U.S. 357 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 32, 34, 36, 38

*Thornburgh v. Abbott*,
    490 U.S. 401 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Tilton v. Marshall*,
    925 S.W.2d 672 (Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Tot v. United States*,
    319 U.S. 463 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53, 54

*Umphlet v. Connick*,
    815 F.2d 1061 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Bass*,
    404 U.S. 336 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Buttorff*,
    761 F.2d 1056 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 38

*United States v. Edge Broadcasting Co.*,
    509 U.S. 418 (1993) . . . . . . . . . . . . . . . . . . . . . . 40, 41, 45, 47, 48, 49

*United States v. Jackson*,
    426 F.3d 301 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*United States v. Orito*,
    413 U.S. 139 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Playboy Entertainment Group, Inc.*,
    529 U.S. 803 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Raines*,
    362 U.S. 17 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Robinson*,
    367 F.3d 278 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Salerno,*
    481 U.S. 739 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 28, 38

*United States v. Thames,*
    214 F.3d 608 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 51

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
    425 U.S. 748 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,*
    455 U.S. 489 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Washington v. Glucksberg,*
    521 U.S. 702 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21, 22

*White Buffalo Ventures, L.L.C. v. Univ. of Tex.,*
    420 F.3d 366 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . 29, 31, 32, 39, 45

*Williams v. Att'y Gen. of Ala.,*
    378 F.3d 1232 (11th Cir. 2004) . . . . . . . . . . . . . . . . 17, 21, 22, 24, 25, 26

*Williams v. King,*
    420 F. Supp. 2d 1224 (N.D. Ala. 2006) . . . . . . . . . . . . . . . . . . 14, 25, 26

*Williams v. Pryor,*
    240 F.3d 944 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 25, 27, 41

*Williamson v. Lee Optical of Okla., Inc.,*
    348 U.S. 483 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Yorko v. State,*
    690 S.W.2d 260 (Tex. Crim. App. 1985) (en banc) . . . . . . . . . . . 13, 16, 41

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio,*
    471 U.S. 626 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

**Statutes and Rules**

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xix

28 U.S.C. §1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xix

28 U.S.C. §1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xix

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxi

FED. R. APP. P. 28(a)(9)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 51

GA. CODE §16-12-80 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

TEX. PEN. CODE §43.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TEX. PEN. CODE §43.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxi

TEX. PEN. CODE §43.21(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 30, 33, 35, 36

TEX. PEN. CODE §43.21(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 30, 34, 35

TEX. PEN. CODE §43.21(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 36

TEX. PEN. CODE §43.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xxi, 17

TEX. PEN. CODE §43.23(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 30, 34

TEX. PEN. CODE §43.23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. PEN. CODE §43.23(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 30, 36

TEX. PEN. CODE §43.23(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

TEX. PEN. CODE §43.23(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 52

TEX. PEN. CODE §43.23(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 33, 35, 48

**Other Authorities**

Adam and Eve Sex Toys Store, http://www.adameve.com  ............... 3, 18

Brief of the American Civil Liberties Union as *Amicus Curiae*,
      Supreme Court No. 02-102, at 11-25  ........................... 21

Oral Argument Transcript, Supreme Court No. 02-102  .................... 21

xviii

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§1331 and 1367. And

because this appeal arises from a final judgment disposing of all claims, R.369-70,

this Court has jurisdiction under 28 U.S.C. §1291. Appellants' notices of appeal,

R.371-73 (August 14, 2006); R.376-78 (August 22, 2006), were timely filed, *see* FED.

R. APP. P. 4(a)(1)(A); R.369-70 (July 24, 2006 judgment).

## RESTATEMENT OF ISSUES PRESENTED

The Texas Penal Code prohibits the advertisement and sale of dildos, artificial vaginas, and other obscene devices. It does not, however, forbid the private use of such devices, and it does not restrict the advertisement or sale of obscene devices for legitimate medical or psychiatric purposes.

### *Substantive Due Process*

1. Is there a substantive-due-process right to advertise and sell obscene devices?

2. Even assuming there is, does the challenged law survive rational-basis review?

### *Commercial Speech*

3. Does the First Amendment protect commercial speech related to unlawful activity—namely, the sale of obscene devices in Texas?

4. Even assuming it does, does the challenged law survive the intermediate-scrutiny test established in *Central Hudson*?

### *Procedural Due Process and State Constitutional Claims*

5. Have Appellants waived the remaining claims asserted below by failing to brief them adequately in this Court?

6. Regardless, do those claims fail as a matter of law?

## STATEMENT OF THE CASE

*Nature of the case*:  This appeal arises from claims asserted under 42 U.S.C. §1983 against the Attorney General of Texas and the District Attorney for Travis County, Texas, each in their official capacities only. It involves due-process and commercial-speech challenges to Texas Penal Code §§43.21 and 43.23 ("the statute"), which regulate the promotion and wholesale promotion of dildos, artificial vaginas, and other obscene devices.

*Course of proceedings*:  Obscene-device retailers Reliable Consultants and Jennifer Rasmussen sought declaratory and injunctive relief against the statute's enforcement. R.13-25. The case was referred to a magistrate judge. R.66. All claims against the Attorney General were initially dismissed based on Eleventh Amendment immunity. R.168-69. But after PHE—another obscene-device retailer—intervened and asserted claims similar to those brought by Reliable Consultants and Rasmussen, R.177-88, the Attorney General intervened to defend the statute's constitutionality, R.240-43, and moved for dismissal under Rule 12(b)(6), R.247-58. Before the district court ruled on the Attorney General's 12(b)(6) motion, Rasmussen dismissed all of her claims. R.297, 309.

*District court's disposition*:  The district court granted the Attorney General's motion to dismiss, R.352-56, and rendered a final judgment dismissing all of Appellants' claims against Appellees, R.369-70.[2]

---

2.  In this brief, "Appellants" refers to Reliable Consultants and PHE; "Appellees" refers to Attorney General Abbott and District Attorney Earle. "RC Br." and "PHE Br." refer to Reliable Consultants's and PHE's appellant's briefs, respectively.

Nos. 06-51067 & 06-51104

# In the
# United States Court of Appeals
# for the Fifth Circuit

RELIABLE CONSULTANTS INC., DOING BUSINESS AS DREAMERS
AND LE ROUGE BOUTIQUE,

*Plaintiff-Appellant,*

v.

TEXAS ATTORNEY GENERAL GREG ABBOTT;
DISTRICT ATTORNEY RONNIE EARLE,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## TEXAS ATTORNEY GENERAL GREG ABBOTT'S APPELLEE'S BRIEF

The Fourteenth Amendment does not protect commerce in obscene devices.

But even if it did, Appellants' substantive-due-process claim would fail because the

statute is rationally related to several legitimate government interests. Appellants'

commercial-speech claim likewise fails because the statute validly makes the sale of

obscene devices unlawful. But even if it did not, the statute would pass intermediate

scrutiny under *Central Hudson*. Finally, Appellants' remaining claims are either

waived or fail as a matter of law. The Court should thus affirm the district court's

judgment in full.

## STATEMENT OF FACTS

**I.     THE STATUTE'S PARTIAL PROHIBITION OF THE ADVERTISEMENT AND SALE OF OBSCENE DEVICES**

Chapter 43 of the Texas Penal Code targets public indecency, and Subchapter B deals specifically with obscenity. It defines "obscene device" as "a device including a dildo or artificial vagina, designed or marketed as useful primarily for the stimulation of human genital organs." TEX. PEN. CODE §43.21(a)(7). Under §43.23(a) of the Code, "[a] person commits [a felony] if, knowing its content and character, he wholesale promotes or possesses with intent to wholesale promote any . . . obscene device." *Id.* §§43.23(a), (b). Under §43.23(c)(1), "[a] person commits [a misdemeanor] if, knowing its content and character, he . . . promotes or possesses with intent to promote any . . . obscene device." *Id.* §§43.23(c)(1), (d).[3]

Section 43.23(f) provides that "[a] person who possesses six or more obscene devices . . . is presumed to possess them with intent to promote the same." Section 43.23(g), however, provides an affirmative defense to prosecution under §43.23 to anyone "who possesses or promotes . . . a device proscribed by this section . . . for a

_____

3. Under the statute, "'[p]romote' means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same," TEX. PEN. CODE §43.21(a)(5), and "'wholesale promote' means to manufacture, issue, sell, provide, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, or to offer or agree to do the same for purpose of resale," *id.* §43.21(a)(6).

*bona fide* medical, psychiatric, judicial, legislative, or law enforcement purpose." This provision thus makes it lawful to both sell and advertise obscene devices for the listed purposes. *Id.* §§43.21(a)(5), 43.23(g).

## II.    APPELLANTS AND THEIR BUSINESS

Appellants are for-profit corporations. R.19, 178. Reliable Consultants operates four retail stores in Texas that "cater to single males, females, and couples interested in privately exploring their sexuality." R.15. The stores sell sexually explicit videos, DVDs, and magazines along with lotions, oils, and obscene devices. R.15. Similarly, PHE is a retail distributor of obscene devices and other sexually related items. R.85. It uses mail and the Internet to market and sell its products throughout Texas. R.85, 178; *see also* Adam and Eve Sex Toys Store, http://www.adameve.com (PHE's website advertising a wide array of obscene devices, pornographic films, and other sex-related novelties). Appellants' customers consist of "individuals who desire to achieve or enhance sexual stimulation through the private use of [obscene] devices." R.22, 185.

3

## III.   APPELLANTS' SUIT

### A.   Reliable Consultants' Claims Under the United States and Texas Constitutions and the Attorney General's Initial Dismissal Based on Eleventh Amendment Immunity

This litigation began when Reliable Consultants sued Texas Attorney General Greg Abbott and Travis County District Attorney Ronnie Earle in their official capacities, seeking declaratory and injunctive relief against enforcement of the portions of Texas Penal Code §§43.21 and 43.23 that "make it a crime to promote obscene devices on a wholesale level." R.16, 25.[4] The case was referred to a magistrate judge. R.66.

In its complaint, Reliable Consultants asserted violation of its purported: (1) Fourteenth Amendment substantive-due-process "liberty interest in . . . private sexual conduct"; (2) First Amendment commercial-speech right to market obscene devices; (3) Fourteenth Amendment procedural-due-process right to be free from §43.23(f)'s supposedly irrebuttable presumption; and (4) analogous free-speech and due-process rights under Article I, §§8 and 19 of the Texas Constitution. R.22-24. Reliable Consultants asserted each of these claims as facial and as-applied challenges. *Id.*

---

4. Although Reliable Consultants' complaint also included claims asserted by Jennifer Rasmussen, a college student who used obscene devices and sold them at parties, R.15-16, Rasmussen voluntarily dismissed all of her claims before the district court considered them, R.297-301, and she is not a party to this appeal.

4

The Attorney General moved to dismiss the claims against him based on Eleventh Amendment immunity, R.41-49, and the District Attorney moved to dismiss the claims against him based primarily on ripeness and standing, R.67-76. Adopting the magistrate judge's recommendation, R.132-43, the district court granted the Attorney General's motion to dismiss but denied the District Attorney's, R.168-69.

**B.    PHE's Intervention to Assert Similar Claims Under the United States Constitution and the Attorney General's Intervention to Defend the Statute's Constitutionality**

PHE intervened and sought certification of a defendant class to consist of all district and county attorneys in Texas. R.177-99. Claiming an "[i]nterest in [the] [s]tatewide [m]arketing and [d]istribution of its [p]roducts," R.89, PHE challenged the statute to the extent that it "criminaliz[es] the commercial sale of sexual devices," R.178. And although it advanced no claims under the Texas Constitution, PHE asserted the same facial and as-applied federal constitutional challenges—based on PHE's alleged substantive-due-process, commercial-speech, and procedural-due-process rights—that Reliable Consultants asserted. R.184-87.

Despite his previous dismissal based on Eleventh Amendment immunity, the Attorney General intervened, in his official capacity, to defend the statute's constitutionality. R.240-43, 245-46. The district court then dismissed PHE's request for certification of a defendant class as moot, concluding that the Attorney General's

5

participation would give statewide effect to any judgment it rendered. R.245. Shortly after his intervention, the Attorney General filed a Rule 12(b)(6) motion to dismiss Appellants' suit. R.247-58.

## C.     Dismissal of Appellants' Suit

The magistrate judge recommended that the district court grant the Attorney General's motion as to all of Appellants' claims. R.308-28. Overruling Appellants' objections, R.330-51, the district court adopted the magistrate judge's recommendation and dismissed both the Attorney General and the District Attorney, R.352-56, 366-68, after altering the case style to reflect that the State of Texas, rather than the Attorney General, was the real party in interest, R.354. Because its dismissal order left no claims pending, the district court rendered a final take-nothing judgment against Appellants, R.369-70, both of which filed timely notices of appeal, R.371-73, 376-78.

## SUMMARY OF THE ARGUMENT

### I.     SUBSTANTIVE DUE PROCESS

Appellants' substantive-due-process claim fails for want of a constitutionally protected liberty interest. Appellants advance only the personal liberty interest identified in *Lawrence v. Texas*, 539 U.S. 558 (2003). In this appeal, however, they assert no substantive-due-process argument on behalf of obscene-device users, and

6

the right addressed in *Lawrence* does not extend to corporate parties' commercial transactions.

Indeed, even if Appellants had attempted to assert a claim on behalf of obscene-device users, that claim would fail because the statute does not prohibit private use of obscene devices, and *Lawrence*—which focused on interpersonal relationships and the privacy of the home—would not support such a claim. Moreover, unlike contraceptives, obscene devices do not implicate any liberty interest relating to procreation, and the Court should decline to create a new Fourteenth Amendment liberty interest broad enough to cover the commercial sale of sex.

Alternatively, Appellants' substantive-due-process claim fails because no fundamental right is at stake and the statute passes rational-basis review. On appeal, Appellants do not argue that this case concerns a fundamental right. Nor do they attempt to show that any alleged right associated with obscene devices is deeply rooted in the Nation's history and tradition—an essential element of the test for determining whether a right should be deemed fundamental. Accordingly, the statute is subject only to rational-basis review.

The statute passes rational-basis scrutiny because: (1) it is based on several police-power interests in protecting public morals—discouraging prurient interests in sexual gratification, combating the commercial sale of sex, and protecting

7

minors—all of which qualify as legitimate government interests; and (2) its prohibitions are rationally related to each of these interests.

## II.    COMMERCIAL SPEECH

Appellants' commercial-speech claim fails at the outset because the statute validly makes Appellants' advertisement and sale of obscene devices unlawful, and the First Amendment does not protect commercial speech relating to unlawful activity. PHE's argument that the statute relates to the lawful *use* of obscene devices cannot be squared with its allegation of only a *commercial*-speech claim, and its argument that the statute criminalizes commercial speech about lawful obscene-device sales is based on a misreading of the statute's text.

Alternatively, even if the commercial speech at issue relates to at least some lawful conduct, Appellants' First Amendment claim nevertheless fails because the statute satisfies the intermediate-scrutiny test applicable to commercial-speech restrictions. Contrary to Appellants' assertions, (1) the police-power interests behind the statute are substantial; (2) in prohibiting the advertisement and sale of obscene devices for illegitimate purposes, the statute directly advances those interests; and (3) the statute's affirmative defense ensures that the restriction on speech will be no greater than necessary to serve the State's interests.

## III.    REMAINING CLAIMS

Finally, Appellants have waived their procedural-due-process and state constitutional claims by failing to adequately brief them on appeal. But even if the Court views them as preserved, those claims likewise fail as a matter of law. Appellants' procedural-due-process claim fails because a rational connection exists between possession of six or more obscene devices and the intent to promote such devices. Indeed, the facts of this case illustrate one of many instances in which the presumption holds true. And because the Texas Constitution offers no greater protection than the United States Constitution with respect to Appellants' due-process and commercial-speech claims, those claims fail for the same reasons that Appellants' federal constitutional claims fail.

### ARGUMENT

## I.    THIS COURT REVIEWS THE DISMISSAL OF APPELLANTS' FACIAL AND AS-APPLIED CHALLENGES TO THE STATUTE *DE NOVO*.

Because this appeal arises from an order of dismissal under Rule 12(b)(6), R.352-56, the *de novo* standard applies to all issues. *Fin. Acquisition Partners L.P. v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). Under this standard, courts treat all of the nonmovant's well-pleaded facts as true. *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006). But to avoid dismissal, the nonmovant must rely on specific facts, not conclusory allegations, *Fin. Acquisition*, 440 F.3d at 286, and it may not properly

9

argue that it could establish facts beyond those that it pled, *see id.* (explaining that, in the absence of relevant "matters of public record," courts assessing Rule 12(b)(6) motions may rely on nothing outside of "the complaint and its proper attachments"). The Court is not limited by the parties' arguments or the district court's reasoning; it may affirm the district court's judgment on any grounds supported by the record. *Hosein*, 452 F.3d at 403.

To succeed on a facial challenge to a statute's constitutionality, a plaintiff must "shoulder [the] heavy burden" of establishing that there are *no* circumstances under which the statute may be constitutionally applied. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *accord United States v. Robinson*, 367 F.3d 278, 290 (5th Cir. 2004).[5] And to succeed on an as-applied challenge, a plaintiff must show that the specific facts of his case illustrate an unconstitutional application of the statute. *See Thornburgh v. Abbott*, 490 U.S. 401, 403-04 (1989). He may not properly assert that the statute would be unconstitutional if applied to a person or situation not before the Court. *United States v. Raines*, 362 U.S. 17, 21 (1960).

---

5. This standard for facial challenges is relaxed only in the narrow context of First Amendment overbreadth claims, *Salerno*, 481 U.S. at 745; *Ben's Bar, Inc. v. Vill. of Somerset*, 316 F.3d 702, 708 n.11 (7th Cir. 2003), and Appellants do not argue that the statute at issue here is overbroad. Nor could they, given that they present only a *commercial*-speech challenge. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982) (explaining that "the overbreadth doctrine does not apply to commercial speech"); *accord Umphlet v. Connick*, 815 F.2d 1061, 1066 n.20 (5th Cir. 1987).

## II.  APPELLANTS FAIL TO STATE A VIABLE FOURTEENTH AMENDMENT SUBSTANTIVE-DUE-PROCESS CLAIM.

Appellants candidly use the words "novel" and "extreme" to describe the new liberty interest that they invite the Court to create for purposes of their substantive-due-process claim. RC Br. at 8; PHE Br. at 42. The district court rightly rejected that invitation. Assuming the truth of every alleged fact, there is no valid basis for Appellants' proposed expansion of substantive due process. *See infra* Part II.A. But even if the Court were to recognize a new liberty interest, that interest could not properly be labeled a fundamental right triggering strict scrutiny, and the statute would survive rational-basis review. *See infra* Part II.B.

### A.  The Fourteenth Amendment Does Not Protect Commerce in Obscene Devices.

A substantive-due-process claim may proceed only if the plaintiff alleges deprivation of a constitutionally protected right. *Mikeska v. City of Galveston*, 451 F.3d 376, 379 (5th Cir. 2006); *see Simi Inv. Co. v. Harris County*, 236 F.3d 240, 249 (5th Cir. 2000) (noting that "[s]ubstantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights"). Because of the doctrine's narrow scope, analysis in this area should be performed with the "utmost care," and courts should "focus on the allegations in the complaint to determine how [the plaintiff] describes the

11

constitutional right at stake and what the [government] allegedly did to deprive [the

plaintiff] of that right." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

### 1.     *Lawrence* does not support Appellants' claim.

The only right that Appellants alleged in support of their substantive-due-

process claim was "the broad right to sexual privacy . . . recently applied to Texas law

. . . in *Lawrence v. Texas*." R.18, 22, 183-84; *accord* RC Br. at 9; PHE Br. at 42.

Their claim, however, does not validly extend to any alleged rights of obscene-device

users.

Appellants' briefing identifies the "*business of selling* sexual devices to

customers for private use" as the activity allegedly protected by the Fourteenth

Amendment. RC Br. at 13 (emphasis added); PHE Br. at 42. And their complaints

focused on those portions of the statute that "make it a crime to promote obscene

devices on a wholesale level," R.16, and that "criminaliz[e] the commercial sale of

sexual devices," R.178; *see also Red Bluff Drive-In, Inc. v. Vance*, 648 F.2d 1020,

1035 (5th Cir. Unit A 1981) (recognizing that the statute at issue here regulates

"commercial transactions in obscene materials"); R.297, 309 (obscene-device user

Jennifer Rasmussen's dismissal from this suit).[6]

---

6. In briefing their substantive-due-process claim in this Court, Appellants
may have declined to assert the alleged privacy rights of obscene-device users
because of doubts about their standing to do so. *See, e.g., Fleck & Assocs., Inc. v.
City of Phoenix*, No. 05-15293, 2006 WL 3755201, at *2-4 (9th Cir. Dec. 22, 2006).

Several States' highest courts have appropriately rejected attempts to expand substantive due process to protect the commercial distribution of obscene devices. *PHE, Inc. v. State*, 877 So. 2d 1244, 1248 (Miss. 2004); *State v. Brenan*, 772 So. 2d 64, 72 (La. 2000); *Yorko v. State*, 690 S.W.2d 260, 264-66 (Tex. Crim. App. 1985) (en banc); *Pierce v. State*, 239 S.E.2d 28, 29 (Ga. 1977). These holdings are sound even if there is a substantive-due-process right to use obscene devices in the home because the Supreme Court has repeatedly rejected the idea that any such right creates a correlative right to receive, transport, and distribute obscene material. *United States v. Orito*, 413 U.S. 139, 141-43 (1973) (collecting cases). And as explained below, Appellants could not show that obscene devices are more analogous to contraceptives (the distribution of which may be protected, *see Carey v. Population Servs. Int'l*, 431 U.S. 678, 688 (1977)), than they are to obscene material used to stimulate genitals for non-procreative purposes. *See infra* at 16-17.

Any contrary holding in this case, which involves only corporate plaintiffs, would extend due-process protection to the commercial sale of sex—a conclusion that would apply with equal strength in cases involving prostitutes. *Morrison v. State*, 526 S.E.2d 336, 338 (Ga. 2000) (making this point and noting that "public commerce in sex, even though consummated in private, is not afforded constitutional protection").

13

Appellants pin their hopes on *Lawrence*, but there is a stark distinction between the personal privacy interest at issue in *Lawrence* and Appellants' economic interest in the sale of obscene devices. In concluding that *Bowers v. Hardwick*, 478 U.S. 186 (1986), had too narrowly defined the right that Texas's anti-sodomy law infringed, the *Lawrence* Court emphasized the "personal bond" between homosexual partners that the statute degraded, explaining that the law "touch[ed] upon the most private human conduct, sexual behavior, and in the most private of places, the home." 539 U.S. at 567. The statute at issue here, by contrast, addresses only the public conduct of promoting obscene devices; it does not forbid their private use.

And as the most recent decision in the ongoing *Williams* litigation correctly noted with respect to a statute substantially similar to the one at issue here,

> it cannot plausibly be argued that the law has targeted a specific class of individuals for discrimination or harm out of simple hostility. Stated somewhat differently, the Alabama [obscene devices] statute, unlike the Texas anti-same-sex-sodomy statute at issue in *Lawrence*, neither directly nor indirectly burdens an *identifiable group* in such a way that a class of stigmatized individuals emerges.

*Williams v. King ("Williams V")*, 420 F. Supp. 2d 1224, 1253 (N.D. Ala. 2006); *see* R.181-82 (reflecting the wide variety of people alleged to use obscene devices). Because the challenged statute does not target any particular class of individuals, the concerns animating the Supreme Court's decision in *Lawrence* are absent here.

14

But even if Appellants could identify a specific class of individuals that the statute singles out, there could be nothing "personal," *Lawrence*, 539 U.S. at 567, about Appellants' interest in "the commercial sale of sexual devices," R.178 (PHE's complaint)—or, as Reliable Consultants alleged, the ability "to promote obscene devices on a wholesale level," R.16. *Lawrence* nowhere suggests that the Fourteenth Amendment now protects the commercial sale of sex. Indeed, in excluding prostitution from the scope of its holding, 539 U.S. at 578, *Lawrence* suggests the opposite.

In short, *Lawrence* adds nothing to Appellants' argument because the personal privacy right it identified is entirely distinct from Appellants' commercial interest. And because the determination of whether a plaintiff has alleged an actionable substantive-due-process liberty interest stands or falls on the plaintiffs' articulation of that interest in its complaint, *Collins*, 503 U.S. at 125, the Court should hold that Appellants failed to state a substantive-due-process claim on which relief could be granted.

> **2.    There is no substantive-due-process right to stimulate one's genitals for non-medical purposes unrelated to procreation or outside of an interpersonal relationship.**

Even if Appellants had attempted—or had standing—to assert the alleged privacy rights of obscene-device *users* in connection with their substantive-due-

15

process claim in this appeal, that assertion would not have advanced their position. Although the Supreme Court has recognized the right of privacy as protecting individuals' ability to control whether or not they have children, *e.g.*, *Carey*, 431 U.S. at 688-89; *Roe v. Wade*, 410 U.S. 113, 152-53 (1973), it has never suggested that the substantive-due-process doctrine ensures individuals' ability to stimulate their genitals in ways that are neither connected to procreation nor associated with any particular lifestyle.

Accordingly, like substantive-due-process cases involving abortion and contraception, *Lawrence* would remain inapposite. And even assuming the Court accepts Appellants' strained argument that obscene devices are not "obscene" (as that term is defined, based on *Miller v. California*, 413 U.S. 15, 24 (1973), in §43.21(a)(1), *see Red Bluff*, 648 F.2d at 1026 & n.5), it is implausible for Appellants to suggest that obscene devices—objects that, by definition, are designed and marketed primarily to stimulate human genitals—are more like contraceptives than other forms of obscenity. *See id.* at 1027 (noting that the devices defined in §43.21(a)(7) are "obscene per se"); *Yorko*, 690 S.W.2d at 265 (observing that "obscene material and obscene devices are used for the same purpose" and are thus categorically different from contraceptives, the primary purpose of which is to

16

prevent conception); *see also* TEX. PEN. CODE §43.23 (placing the challenged

statutory prohibitions under the heading "obscenity").[7]

Significantly, the courts that have struck down laws of this same general class

have done so because they lacked the equivalent of Texas Penal Code §43.23(g),

which provides an affirmative defense to those who promote obscene devices for

legitimate medical and psychiatric purposes. *Brenan*, 772 So. 2d at 75-76; *State v.*

*Hughes*, 792 P.2d 1023, 1026-28, 1031 (Kan. 1990); *People v. Seven Thirty-Five E.*

*Colfax*, 697 P.2d 348, 369-70 & n.27, 374-75 (Colo. 1985) (en banc).[8]  Section

43.23(g) thus distinguishes the Texas statute from its Louisiana, Kansas, and

Colorado counterparts. *See Williams v. Att'y Gen. of Ala.* ("*Williams IV*"), 378 F.3d

1232, 1233, 1250 (11th Cir. 2004) (upholding the Alabama obscene-device statute,

---

7. In the district court, Reliable Consultants asserted that §43.21(a)(7) could be read to cover "condoms, herbal pills and oils, . . . Viagra," and other similar products. R.17. But the primary purpose of condoms is to prevent pregnancy and the spread of sexually transmitted diseases, not to stimulate genitals, and herbal pills, oils, and medications do not fit within the common meaning of "device." Not surprisingly, Appellants can point to no instance in which the statute has been applied to target the sale of such products.

8. In addition to citing these inapposite cases, Appellants assert that *Postscript Enterprises, Inc. v. Whaley*, 658 F.2d 1249 (8th Cir. 1981), supports their argument. It does not. The *Postscript* court's analysis concerned only the portion of an ordinance that restricted the sale of contraceptives. *Id.* at 1253. Because the ordinance's vagueness was dispositive, the court expressly declined to rule on whether its restriction on trade in obscene devices violated substantive due process. *Id.* at 1253-54 & n.6, 1256.

17

which contains a provision substantively similar to §43.23(g), against substantive-due-process challenge); *see also PHE*, 877 So. 2d at 1248-49 (stating that "[p]eople who are sexually dysfunctional . . . should be treated by a physician or a psychologist" and noting that "[t]he novelty and gag gifts which [PHE] sell[s] have no medical purpose").[9]

Indeed, no judicial decision of which the Attorney General is aware has recognized a substantive-due-process right to be free from statutory prohibitions substantively similar to those of §§43.21 and 43.23. Nor has any court recognized a corporation's alleged substantive-due-process right in the commercial sale of sex, obscene devices, or any other form of obscenity. This Court should not be the first to do so.

---

9. Although PHE alleged that, in the abstract, some obscene devices serve "a wide variety of therapeutic needs," R.182; *accord* PHE Br. at 8-9, neither Appellant alleged that the devices it sells are for use in treating legitimate therapeutic needs or that it sells obscene devices to medical professionals for use in treating patients. And although PHE noted that the Food and Drug Administration has regulated certain obscene devices for therapeutic use, a search of PHE's website reveals that PHE does not sell such devices—or at least fails to market them as such. *See* Adam and Eve Sex Toys Store, http://www.adameve.com ("Search" function last accessed January 21, 2007).

18

**B. Alternatively, if Appellants Have Alleged an Actionable Fourteenth Amendment Liberty Interest, the Statute Survives Rational-Basis Review.**

In substantive-due-process analysis, the nature of the right determines the level of scrutiny. Claims based on fundamental rights—such as the right to marry, *Loving v. Virginia*, 388 U.S. 1, 12 (1967), or the right to have children, *Skinner v. Oklahoma*, 316 U.S. 535, 541 (1942)—are analyzed under strict scrutiny. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 288 n.18 (5th Cir. 2001). Claims based on all other types of protected property or liberty interests are analyzed under the rational-basis standard. *Simi*, 236 F.3d at 249.

Even assuming that Appellants have identified an actionable Fourteenth Amendment liberty interest, they have not shown that interest to be a fundamental right. *See infra* Part II.B.1. Accordingly, only rational-basis review could apply, and the statute would pass that test as a matter of law. *See infra* Part II.B.2.

**1. Because Appellants' claim is not based on a fundamental right, strict scrutiny could not apply.**

In the district court, PHE made an assertion that Reliable Consultants did not—that the challenged statute "burdens a fundamental right and is subject to strict scrutiny." R.276. On appeal, however, Appellants have abandoned that argument. RC Br. at 9 (noting that, in the district court, Reliable Consultants did not "argue, or even suggest, that *Lawrence* created a new fundamental right of sexual privacy or

19

even acknowledged that such a fundamental right exists"); *id.* at 11 (criticizing the magistrate judge's application of rational-basis review but not arguing that he should have applied strict scrutiny); PHE Br. at 42. Accordingly, any argument that this case concerns a fundamental right has been waived. FED. R. APP. P. 28(a)(9)(A); *United States v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000); *L&A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994).

Regardless, Appellants can cite no decision recognizing a fundamental right associated in any way with obscene devices, and as Appellants concede, a plaintiff seeking to establish a new fundamental right must satisfy the "stringent test" laid out in *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). RC Br. at 13 n.3; *see Malagon de Fuentes v. Gonzales*, 462 F.3d 498, 505 (5th Cir. 2006). That test requires two things: (1) a "careful description" of the asserted fundamental right, *Reno v. Flores*, 507 U.S. 292, 302 (1993); *Glucksberg*, 521 U.S. at 721; and (2) proof that the alleged right is one of "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed," *Glucksberg*, 521 U.S. at 720-21 (internal quotation marks and citations omitted).

20

With respect to the first *Glucksberg* prong, Reliable Consultants alleged only "the broad right to sexual privacy . . . recently applied to Texas law . . . in *Lawrence*," R.18; *accord* R.22, and PHE's complaint echoes this same assertion, R.183-84. Yet as Appellants now acknowledge, RC Br. at 9; PHE Br. at 42, the *Lawrence* Court refused to recognize a fundamental right to sexual privacy; instead, it applied rational-basis review, *see* Oral Argument Transcript, Supreme Court No. 02-102, at 4 (*Lawrence* plaintiff's argument for recognition of a fundamental right); Brief of the American Civil Liberties Union as *Amicus Curiae*, Supreme Court No. 02-102, at 11-25 (supporting same argument); 539 U.S. at 586 (Scalia, J., dissenting); *Williams IV*, 378 F.3d at 1236-38 & n.6 (rejecting the idea that *Lawrence* or any other Supreme Court decision established a fundamental right to sexual privacy, let alone one broad enough to cover obscene devices); *accord Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 815-17 (11th Cir. 2004).

But even assuming that Appellants had articulated a right sufficient to satisfy the first prong of the *Glucksberg* test, they could not show that the right to promote dildos, vibrators, and other obscene devices—or, indeed, even to use those devices in private—is "deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty." *Glucksberg*, 521 U.S. at 721 (internal quotation marks and citations omitted). This remains true even on the generous assumption that

21

Appellants could prove that *any* type of activity associated with obscene devices is "deeply rooted" because Appellants' pleadings conspicuously fail to make that allegation. *See Fin. Acquisition*, 440 F.3d at 286 (reflecting that, under Rule 12(b)(6), courts look "only [to] the complaint and its proper attachments").

In short, Appellants failed to plead either (1) a carefully described right that could arguably be considered fundamental or (2) that the alleged fundamental right was deeply rooted in the Nation's history. *Glucksberg*, 521 U.S. at 720-21. Accordingly, taking as true all of the facts that Appellants *did* plead, there is no support for the recognition of a fundamental right in this case. *See Williams IV*, 378 F.3d at 1239-1250. Strict scrutiny could therefore not apply. *Simi*, 236 F.3d at 249.

**2.     Rational-basis review applies, and the statute is constitutional under that standard as a matter of law.**

In the absence of a fundamental right, the Court's substantive-due-process inquiry is merely whether the challenged law has a rational basis. *Id.* Rational-basis review "begins with a strong presumption of constitutional validity," *Malagon de Fuentes*, 462 F.3d at 504, and is highly deferential to the enacting legislature, *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314 (1993). Indeed, it is "a paradigm of judicial restraint." *Id.* Under the rational-basis standard, a law is constitutional so long as it is "rationally related to legitimate government interests," *Glucksberg*, 521 U.S. at 728; *accord Energy Mgmt. Corp. v. City of Shreveport*, 467 F.3d 471, 481

22

(5th Cir. 2006)—or, in other words, so long as it is not simply arbitrary, *Montagino v. Canale*, 792 F.2d 554, 557 (5th Cir. 1986).

This lenient test is satisfied if "there is any reasonably conceivable state of facts that could provide a rational basis" for the statute, regardless of whether the lawmakers who enacted it actually expressed a legitimate interest. *FCC*, 508 U.S. at 314; *id.* at 315 (further explaining that, under the rational-basis standard, "a legislative choice . . . may be based on rational speculation unsupported by evidence or empirical data"). The plaintiff bears the burden to show that the challenged law is arbitrary, *Montagino*, 792 F.2d at 557, and "[i]f the question is at least debatable, there is no substantive due process violation," *Simi*, 236 F.3d at 251 (quoting *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996)).[10]

### a.    Several legitimate interests support the statute.

The morality-based interests behind the statute's prohibition on commerce in obscene devices include discouraging prurient interests in autonomous sex and the pursuit of sexual gratification unrelated to procreation, *see* R.22, 185 (Appellants' complaints identifying their customers as those "desir[ing] to achieve or enhance sexual stimulation through the private use of [obscene] devices"), and prohibiting the

---

10.    Moreover, statutes that affect only economic interests typically pass constitutional muster because the Supreme Court "presumes that even improvident decisions will eventually be rectified by the democratic processes." *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

23

commercial sale of sex, *see also* TEX. PEN. CODE §43.02 (prohibiting prostitution). Another significant interest that the statute serves is the protection of minors and unwilling adults from exposure to obscene devices and their advertisement. *See Williams IV*, 378 F.3d at 1238 n.8 (noting that "[t]here is nothing 'private' or 'consensual' about the advertising and sale of a dildo" and that "such advertising and sale is just as likely to be exhibited to children as to 'consenting adults'").

Appellants challenge these interests as irrational. But the State's police power broadly encompasses the ability to protect public health, safety, morals, and welfare, *Nashville, C. & St. L. Ry. v. Walters*, 294 U.S. 405, 429 (1935); *Tex. Manufactured Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996); *Davidson v. City of Clinton*, 826 F.2d 1430, 1431, 1433 (5th Cir. 1987), and a State's exercise of the police power is unquestionably a legitimate interest, *Hill v. Colorado*, 530 U.S. 703, 715 (2000); *see Stone v. City of Maitland*, 446 F.2d 83, 87 (5th Cir. 1971) (stating that the police power "describes the full range of legitimate public interests").

The Supreme Court has specifically confirmed that the police-power interest in protecting morals is a legitimate government interest. *E.g.*, *Paris Adult Theater I v. Slaton*, 413 U.S. 49, 61 (1973); *Roth v. United States*, 354 U.S. 476, 485 (1957). Indeed, in reviewing Alabama's obscene-device statute, the Eleventh Circuit

concluded that "the State's interest in public morality is sufficiently substantial to satisfy the government's burden under the more rigorous intermediate level of constitutional scrutiny applicable in some cases." *Williams v. Pryor* ("*Williams II*"), 240 F.3d 944, 949 n.3 (11th Cir. 2001).

Contrary to Appellants' argument, the majority opinion in *Lawrence* did not invalidate all morality-based interests that a State may assert in exercising the police power. As the *Williams IV* court noted, "[o]ne would expect the Supreme Court to be manifestly more specific and articulate than it was in *Lawrence* if now such a traditional and significant jurisprudential princip[le] [as the government interest in protecting public morals] has been jettisoned wholesale." 378 F.3d at 1238 n.8; *accord Williams V*, 420 F. Supp. 2d at 1249-1250 (recognizing that "[t]o hold that public morality can *never* serve as a rational basis for legislation after *Lawrence* would cause a 'massive disruption of the current social order,' one this court is not willing to set into motion" (quoting *Lawrence*, 539 U.S. at 591 (Scalia, J., dissenting))).[11]

---

11. Construing *Lawrence* as Appellants do would invite substantive-due-process challenges to virtually every criminal law in the country, since criminal laws are generally based on society's moral judgment about what is right and what is wrong. *See Paris Adult Theater I*, 413 U.S. at 68 n.15; *United States v. Bass*, 404 U.S. 336, 348 (1971).

To be sure, *Lawrence* rejected one specific application of the State's morality-based interest. It did so, however, based on its extended discussion of the statute's unconstitutional animosity toward a particular group. 539 U.S. at 567, 571, 575, 577-78. As already noted, there is no particular group of people that the Texas obscene-device statute targets. *See supra* at 14. Accordingly, *Lawrence* does not preclude reliance on the established police-power interest in protecting public morals. *Williams V*, 420 F. Supp. 2d at 1253-54.

Finally, it is undoubtedly true that some individuals and couples—perhaps even some married couples—believe that hiring a willing prostitute or engaging in consensual bigamy would enhance their sexual experiences. *See Williams IV*, 378 F.3d at 1242 n.12. Despite their failure to threaten the participants' physical safety, neither of these illegal activities is rendered lawful by *Lawrence* or by any other case. *See Lawrence*, 539 U.S. at 578 (noting that the Court's decision did not extend to prostitution). Their prohibition is validly grounded in the State's legitimate interest in protecting public morals, as are the prohibitions contained in the statute challenged here.

### b. The statutory prohibition is rationally related to the State's legitimate interests.

The rational-basis standard does not require a perfect fit between the State's interests and a statutory prohibition. *Heller v. Doe*, 509 U.S. 312, 321 (1993). Nor

need a State's law "be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487-88 (1955).

Moreover, under the rational-basis test, the government "must be allowed leeway to approach a perceived problem incrementally"—even if its incremental approach is significantly over-inclusive or under-inclusive. *FCC*, 508 U.S. at 316; *see also New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (noting that "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines").

Here, the challenged statute criminalizes Appellants' commercial distribution of obscene devices in furtherance of the State's legitimate interests in discouraging the prurient interest in obscenity, combating the commercial sale of sex, and protecting minors. *See supra* at 23-24. The Eleventh Circuit held that Alabama's substantively similar statute is "certainly . . . a rational means for eliminating commerce in [obscene] devices, which itself is a rational means for making the acquisition and use of the devices more difficult." *Williams II*, 240 F.3d at 949-50.

27

This Court should reach the same conclusion. Appellants' facial challenge based on the threat of prosecution for advertising and selling obscene devices fails either for want of a constitutionally protected liberty interest or, alternatively, because this particular prohibition is rationally related to several legitimate government interests. And because the facts supporting Appellants' as-applied challenge illustrate one way in which the statute constitutionally prohibits nonmedical commerce in obscene devices, their facial challenge necessarily fails as well. *Salerno*, 481 U.S. at 745.

## III. APPELLANTS FAIL TO STATE A VIABLE FIRST AMENDMENT COMMERCIAL-SPEECH CLAIM.

Appellants' First Amendment argument is a mere house of cards. Removal of its faulty foundational premise—that the proscribed commercial speech relates to at least some lawful activity, PHE Br. at 19-28—makes the entire structure fall. *See infra* Part III.A. But even assuming that this argument's premise were correct, the statute would pass the intermediate-scrutiny test applicable to laws restricting commercial speech. *See infra* Part III.B.

### A. The First Amendment Does Not Protect Commercial Speech That Relates to Unlawful Obscene-Device Sales.

Appellants assert that the statute infringes only commercial speech. RC Br. at 16; PHE Br. at 2. By definition, commercial speech proposes a commercial

28

transaction. *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473-74, 482 (1989); *Cramer v. Skinner*, 931 F.2d 1020, 1033 (5th Cir. 1991). It is "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 561 (1980); *White Buffalo Ventures, L.L.C. v. Univ. of Tex.*, 420 F.3d 366, 374 (5th Cir. 2005).

Legitimate commercial speech receives only limited First Amendment protection, *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995), and commercial speech that is misleading or concerns unlawful activity receives no constitutional protection at all, *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 388-89 (1973); *Speaks v. Kruse*, 445 F.3d 396, 400 (5th Cir. 2006). This is a specific exception to the general rule that the government may not constitutionally ban speech based on its content. *Cent. Hudson*, 447 U.S. at 564 n.6.

Appellants' futile attempt to paint their profit-seeking advertisements as mere vehicles for spreading good news about the alleged benefits of using obscene devices, PHE Br. at 17-20, does not remove their self-styled commercial-speech claim from commercial-speech analysis. *See Cent. Hudson*, 447 U.S. at 562 n.5, 563 (noting that commercial speech receives lessened First Amendment protection even though the sale of "many, if not most, products may be tied to public concerns with the

29

environment, energy, economic policy, or individual health and safety"). And under

that analysis, Appellants' claim fails as a matter of law.

### 1. Appellants' speech relates to unlawful activity.

The statute unquestionably makes the sale of obscene devices unlawful, TEX.

PEN. CODE §§43.21(a)(5), (6); *id.* §§43.23(a), (c)(1), and Appellants have presented

no viable argument for invalidating that prohibition. Their substantive-due-process

challenge fails. *See supra* Part II; *see also* RC Br. at 16 (arguing that Appellants'

commercial-speech claim survives only because their substantive-due-process claim

is valid). And their remaining challenges likewise fail, assuming they haven't been

waived. *See infra* Part IV.

Because the statute constitutionally criminalizes the sale of obscene devices to

people interested in merely "exploring their sexuality," R.15 (Reliable Consultant's

complaint), settled precedent precludes the need for further analysis. *E.g.*, *Thompson*,

535 U.S. at 367; *Cent. Hudson*, 447 U.S. at 566; *see Ford Motor Co. v. Tex. Dep't of*

*Transp.*, 264 F.3d 493, 507 (5th Cir. 2001); *United States v. Buttorff*, 761 F.2d 1056,

1066-68 (5th Cir. 1985); *see also PHE*, 877 So. 2d at 1250 (rejecting PHE's similar

First Amendment challenge to the Mississippi obscene-device statute on this basis).

Accordingly, the Court should hold that Appellants' lack of a legal right to sell obscene devices precludes their commercial-speech claim.[12]

### 2. Contrary to PHE's argument, the statute restricts no speech relating to lawful activity.

#### a. Commercial speech necessarily relates to sale, not use.

As already noted, commercial speech relates solely to economic interests. *Cent. Hudson*, 447 U.S. at 561; *White Buffalo*, 420 F.3d at 374. Neither the Supreme Court nor this Court has recognized an exception to that rule. But even if there were an exception, it would not apply here. Both Reliable Consultants and PHE are for-profit businesses, and they challenge the statute only to the extent that it prevents them from selling their products. R.16, 178. PHE's new argument that the statute also restricts speech about the lawful *use* of sexual devices, PHE Br. at 17-20, cannot change that.

Appellants cannot credibly claim a commercial interest in seeing that the devices they sell are actually used. Although Reliable Consultants and PHE remain free to engage in unfettered *noncommercial* speech touting the uses of obscene devices, it is difficult to imagine their garnering shareholder support for doing so.

---

12. The Court has specifically held that, in order to defeat a commercial-speech claim on this ground, the defendant need not identify a source of law other than the challenged statute to establish the unlawfulness of the underlying activity. *Ford Motor Co.*, 264 F.3d at 505-06 & n.7.

31

And it is beyond dispute that all of the speech at issue here is directly linked to offers to sell obscene devices in violation of Texas law. *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 637 (1985). As such, it is unprotected by the First Amendment. *Thompson*, 535 U.S. at 367; *Speaks*, 445 F.3d at 400.

In support of its argument otherwise, PHE cites a passage from *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977). PHE Br. at 20. That passage, however, is merely an explanation of the reasons for the Supreme Court's relatively recent extension of *any* First Amendment protection to commercial speech, 433 U.S. at 364 (discussing *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748 (1976)), and it highlights several points directly contrary to PHE's argument.

First, in noting that "commercial speech serves to inform the public of the availability, nature, and prices of products," 433 U.S. at 364, *Bates* reinforces the fact that commercial speech "propos[es] a commercial transaction," *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978), and is "expression related solely to . . . economic interests," *Cent. Hudson*, 447 U.S. at 561; *White Buffalo*, 420 F.3d at 374. Second, *Bates* specifically confirms that "[a]dvertising concerning transactions that are themselves illegal obviously may be suppressed." 433 U.S. at 384. And finally,

32

the example of a "significant issue[] of the day" that *Bates* refers to, *id.* at 364, is the availability of abortion as a legal option for women who wish to exercise their fundamental right to decide whether or not to bear a child, *see Bigelow v. Virginia*, 421 U.S. 809, 822 (1975)—a far cry from Appellants' supposed "right" to unlawfully market and sell obscene devices.

> **b.    Because the statute coextensively prohibits advertising and sale, it does not proscribe any speech related to lawful activity.**

Focusing on §43.23(g), PHE asserts that the statute restricts speech about the lawful distribution of obscene devices for legitimate medical, psychiatric, and other permissible purposes. PHE Br. at 17-21. This argument fails at the outset.

Section 43.23(g)'s affirmative defense applies coextensively to advertisement and sale: Devices that may be lawfully sold may be lawfully advertised, and devices that may not be lawfully sold may not be lawfully advertised. TEX. PEN. CODE §43.23(g) (listing the purposes for which it is lawful to "promote[]" obscene devices); *id.* §43.21(a)(5) (defining "promote" to include both "sell" and "advertise"). Because Appellants have not alleged or argued that they themselves advertise or sell obscene devices for any purpose listed in §43.23(g), neither the sale nor the advertisement at issue here is lawful. But even if Appellants had made such allegations, they would

33

still lack a viable First Amendment claim because the speech, like the sale, would be permissible.[13]

And contrary to PHE's assertions, PHE Br. at 25-26, *This That and the Other Gift & Tobacco, Inc. v. Cobb County*, 285 F.3d 1319 (11th Cir. 2002), does not support their argument.  Like the Texas statute, the Georgia statute at issue in *Cobb County* prohibited both the advertisement and the dissemination of obscene devices. GA. CODE §16-12-80(a); *Cobb County*, 285 F.3d at 1321.  But unlike §43.23(g), the Georgia statute's affirmative defense applied *exclusively* to dissemination. GA. CODE §16-12-80(e) ("It is an affirmative defense under this Code section that *dissemination of* the material was restricted to . . . [a] person whose receipt of such material was authorized in writing by a licensed medical practitioner or psychiatrist.") (emphasis added); *Cobb County*, 285 F.3d at 1324.

The Eleventh Circuit recognized that, under the Georgia statute, an obscene-device retailer could lawfully sell, but *not* advertise, certain products—and that the statute thus partially restricted speech about lawful activity.  *Cobb County*, 285 F.3d at 1324 (noting that "[d]istributors of sexual devices are *forbidden unqualifiedly* from

_____

13. PHE's further observation that §43.23(g) covers only promotion, and not also wholesale promotion, PHE Br. at 25, does not advance Appellants' argument. PHE merely highlights that wholesale promotion of obscene devices is, without exception, unlawful. TEX. PEN. CODE §§43.21(a)(6), 43.23(a). Accordingly, commercial speech related to any type of wholesale promotion is beyond the First Amendment's protection. *Thompson*, 535 U.S. at 367; *Speaks*, 445 F.3d at 400.

34

advertising their products, even when the market they seek to reach consists of those consumers lawfully entitled to purchase those products" (emphasis added)). Because the Texas statute's affirmative defense does not create this discrepancy—and proscribes no speech relating to lawful activity—the Eleventh Circuit's reasoning in *Cobb County* is inapposite.

Similarly, PHE is incorrect that this Court's decisions in *Eimann v. Soldier of Fortune Magazine, Inc.*, 880 F.2d 830 (5th Cir. 1989), and *Dunagin v. City of Oxford*, 718 F.2d 738 (5th Cir. 1983), support its argument. The statute does not restrict "advertising related to activities that are illegal in some circumstances but legal in others." PHE Br. at 26. As already noted: (1) in every instance in which §43.23(g) makes it legal to sell an obscene device, the same provision makes it legal to advertise that sale, TEX. PEN. CODE §43.23(g); *see id.* §43.21(a)(5) (defining "promote" to include both advertisement and sale); (2) under no circumstances may unlawful obscene-device sales be legally advertised, *see id.*; and (3) under no circumstances is either the wholesale promotion of obscene devices or speech related to wholesale promotion legal, *id.* §43.21(a)(6) (defining "wholesale promote"); *see id.* §43.23(g) (affirmative defense applicable to "promotion" alone); *supra* at 34 n.13.

In short, the statute's prohibitions on sales are precisely paired with its prohibitions on speech about such sales, and Appellants' complaints confirm that

35

both the sales and the advertisements at issue here fall on the unlawful side of that

line.  *E.g.*, R.14-20, 183-84 (alleged facts supporting Appellants' as-applied

challenges); R.181, 183 (PHE's complaint alleging that some obscene devices are

sold for legitimate medical purposes but that PHE's own obscene devices are merely

"designed and marketed for private use").  If Appellants did in fact sell and market

obscene devices for purposes identified in §43.23(g), they would have no claim that

the other challenged portions of the statute "make it impossible" for them to do so,

R.183, nor would they legitimately fear prosecution, *see* R.184.[14]

### c.      PHE's remaining arguments are meritless.

Citing two pure-speech cases, PHE further argues that §43.23(g)'s affirmative

defense cannot save the statute from First Amendment scrutiny.  PHE Br. at 23 (citing

*Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656 (2004); *Ashcroft v. Free Speech*

---

14. PHE also incorrectly asserts that the statute defines "obscene device" by
the speech accompanying it, PHE Br. at 19, 21, and attempts to equate the statute with
the zoning ordinance at issue in *MD II Entertainment, Inc. v. City of Dallas*, 28 F.3d
492, 494 (5th Cir. 1994), which "impose[d] . . . zoning requirements . . . on
businesses only because of terms used in their advertising," PHE Br. at 22.  Unlike
the ordinance at issue in *MD II*, the statute's advertising prohibition applies based on
the nature of the underlying product itself.  TEX. PEN. CODE §§43.21(a)(5),
43.23(c)(1).  The focus of §43.21(a)(7)'s definition of "obscene device" is
"designed," not "marketed," for if a device is marketed, but *not* designed, as "useful
primarily for the stimulation of human genital organs," TEX. PEN. CODE §42.21(a)(7),
the marketing is untruthful, deceptive, or misleading—and, as such, likewise
unentitled to First Amendment protection, *Thompson*, 535 U.S. at 367; *Speaks*, 445
F.3d at 400.

36

*Coalition*, 535 U.S. 234 (2002)). But in this commercial-speech case, Appellants may not properly rely on pure-speech cases applying the overbreadth doctrine, *see Free Speech Coalition*, 535 U.S. at 244-45, and neither cited case supports PHE's argument that *Central Hudson* analysis is required.

Regardless, it would not be difficult to prove that conduct falls within §43.23(g)'s affirmative defense. In contrast to the difficulty a party might face in proving that pornographic materials were "not . . . distributed in a manner conveying the impression that they depicted real children," *id.* at 255, it would be immediately clear whether an obscene device was or was not packaged or advertised as useful in treating medical or psychiatric problems. *Cf. Brenan*, 772 So. 2d at 77 (Traylor, J., dissenting) (noting that the obscene devices at issue bore the label: "'Sold as a Novelty Only. This Product is not Intended as a Medical Device.'").

Indeed, despite PHE's concerns about the "practical difficulties" that §43.23(g) allegedly engenders, PHE Br. at 23-24, Appellants do not argue that any portion of the statute is vague, *cf. Cobb County*, 285 F.3d at 1324-25. And a retailer who markets and sells only medically related obscene devices need not concern itself with whether its marketing reaches those without valid medical needs or whether its products may be intentionally misused. *See Dunagin*, 718 F.2d at 743.

37

Contrary to PHE's argument, PHE Br. at 24-25, truthful and otherwise legal advertising about obscene devices designed for the treatment of legitimate medical problems would presumably both educate consumers who have such problems about a possible solution and, at the same time, deter those *without* such problems from attempting to purchase unneeded products that could be sold to them in Texas only illegally. But again, because neither Appellant has alleged or argued that its own devices are lawfully sold under §43.23(g), the illegality of the commercial transactions at issue here precludes Appellants' claim. *Thompson*, 535 U.S. at 367; *Speaks*, 445 F.3d at 400.

In sum, Appellants' commercial speech relates entirely to activity that the statute validly makes unlawful, and Appellants' contrary arguments all fail as a matter of law. Because settled precedent establishes that the First Amendment does not protect the commercial speech that the statute prohibits, the district court's dismissal of Appellants' First Amendment claim should be affirmed without further analysis, *see, e.g.*, *Ford Motor Co.*, 264 F.3d at 507; *Buttorff*, 761 F.2d at 1066-68.[15]

---

15. More specifically, Appellants' as-applied challenge fails because their commercial speech is not constitutionally protected. And because Appellants have not argued that the statute is overbroad, *see supra* at 10 n.5, the failure of their as-applied challenge provides at least one example of the statute's constitutional application—a showing that suffices to defeat their facial challenge, *Salerno*, 481 U.S. at 745.

**B.    Alternatively, Even if Appellants' Speech Relates to Some Lawful Activity, the Statute Survives First Amendment Scrutiny.**

Because commercial speech "occurs in an area traditionally subject to government regulation," *Ohralik*, 436 U.S. at 456, the Constitution accords it lesser protection than other types of speech. *Cent. Hudson*, 447 U.S. at 562 n.5, 563. Restrictions on commercial speech are not analyzed under strict scrutiny. Rather, they are evaluated using the intermediate-scrutiny standard announced in *Central Hudson*. *White Buffalo*, 420 F.3d at 374.[16]

Under *Central Hudson*, a law restricting nonmisleading commercial speech related to lawful activity does not violate the First Amendment so long as it serves a substantial government interest, directly advances that interest, and serves the interest no more extensively than necessary. 447 U.S. at 566; *accord MD II*, 28 F.3d at 495. As shown below, even if the Court concludes that some portion of Appellants' speech

---

16. PHE suggests that strict scrutiny might apply. But in *Greater New Orleans Broadcasting Association v. United States*—a decision that post-dates the cases PHE relies on, PHE Br. at 17-18 (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992); *MD II Entm't*, 28 F.3d at 494)—the Supreme Court reconfirmed the applicability of *Central Hudson*'s intermediate-scrutiny test to restraints on commercial speech. 527 U.S. 173, 183-88 (1999); *accord Speaks*, 445 F.3d at 400 & n.10.

PHE also mistakenly relies on *United States v. Playboy Entertainment Group, Inc.*—a case involving pure, rather than commercial, speech, 529 U.S. 803, 806 (2000). As already noted, the commercial-speech doctrine creates an exception to the general rule that content-based restrictions are constitutionally impermissible. *Cent. Hudson*, 447 U.S. at 564 n.6. Content-based restrictions on commercial speech are frequently upheld under *Central Hudson*. *E.g.*, *Moore v. Morales*, 63 F.3d 358, 360-63 (5th Cir. 1995); *Cramer*, 931 F.2d at 1033-35.

relates to lawful activity, the statute would pass each of the final three stages of *Central Hudson* analysis.

### 1. The statute serves substantial government interests.

#### a. Settled precedent confirms that the interests behind the statute are substantial.

As already noted, the statute furthers several government interests—including discouraging prurient interests in autonomous sex and the pursuit of sexual gratification for nonprocreative purposes, protecting minors and unwilling adults from exposure to obscene devices and their advertisement, and prohibiting the commercial sale of sex. *See supra* at 23-24. Each of these interests derives from the State's broad police power to preserve public morals. *See Nashville*, 294 U.S. at 429; *Tex. Manufactured Hous.*, 101 F.3d at 1106; *Davidson*, 826 F.2d at 1431, 1433. Under the second *Central Hudson* prong,[17] the question is whether any of these interests are "substantial." *Cent. Hudson*, 447 U.S. at 566.

They are. In *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 341 (1986), the Supreme Court recognized that the government interest in protecting citizens' health, safety, welfare, and "moral and cultural patterns" is substantial for purpose of the *Central Hudson* test. Similarly, in *United States v.*

---

17. For purposes of this alternative argument only, the Attorney General assumes that the speech at issue relates to lawful activity—and thus that Appellants can clear the first *Central Hudson* prong. *See* 447 U.S. at 566.

40

*Edge Broadcasting Co.*, 509 U.S. 418, 426 (1993), the Supreme Court concluded that the government interest in restricting advertising of lotteries—which the Court labeled a "'vice' activity"—was unquestionably substantial.

And in a case involving Alabama's obscene-device statute, the Eleventh Circuit specifically concluded that "the State's interest in public morality is sufficiently substantial to satisfy the government's burden under the more rigorous intermediate level of constitutional scrutiny applicable in some cases." *Williams II*, 240 F.3d at 950 n.3.

Texas's highest criminal court has reached the same conclusion. In addressing a previous First Amendment challenge to the portion of the Texas Penal Code challenged here, the *Yorko* court held that the State's "'social interest in order and morality' (*Roth*, [354 U.S. at 485]) or 'decency' (*Paris Adult Theatre I*, [413 U.S. at 61])" sufficiently supported the statute's prohibitions. 690 S.W.2d at 265.[18] Accordingly, even without considering the State's more specific—and

---

18. Although PHE points to the Court's statement that it "need not" analyze commercial-speech restrictions under *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991), or other cases concerning the secondary effects of sexually oriented businesses, PHE Br. at 22 n.7, 32-33 (citing *MD II*, 28 F.3d at 494 n.9), the two intermediate-scrutiny tests are closely akin, *see Fla. Bar*, 515 U.S. at 628; *Fox*, 492 U.S. at 477; *see also Edge Broad.*, 509 U.S. at 429 (noting that the *Central Hudson* test is not more stringent that the analogous test for time, place, and manner restrictions). Moreover, PHE has pointed to no authority suggesting that a "substantial" government interest means one thing under some Supreme Court decisions and another under others.

41

unquestionably significant—interest in protecting minors from harmful speech, *see*

*Sable Commc'ns, Inc. v. FCC*, 492 U.S. 115, 126 (1989), the general morality-based

interests supporting the statute qualify as "substantial" for *Central Hudson* purposes.

> **b.     PHE would hold the State to an insupportably high standard, and its argument confuses distinct phases of *Central Hudson* analysis.**

PHE ignores *Posadas de Puerto Rico*, *Edge Broadcasting*, *Williams II*, and

*Yorko*, essentially asking the Court to require the State to advance a compelling

interest. But the *Central Hudson* test is not so demanding. Indeed, the Supreme

Court has recognized even a purely *aesthetic* police-power interest as

substantial—and even in the context of political, as opposed to merely commercial,

speech. *Members of the City Council of the City of Los Angeles v. Taxpayers for*

*Vincent*, 466 U.S. 789, 805-07 (1984) (holding that "the visual assault on the citizens

of Los Angeles presented by an accumulation of signs posted on public property . . .

constitutes a significant substantive evil within the City's power to prohibit"); *accord*

*Lindsay v. City of San Antonio*, 821 F.2d 1103, 1108-09 (5th Cir. 1987).

PHE next repeats its fallacious argument that content-based restrictions are

nearly always invalid. PHE Br. at 29-30. While this may be true in the context of

pure speech, *see, e.g., Texas v. Johnson*, 491 U.S. 397, 414-15 (1989) (cited in PHE

Br. at 30), the same presumption does not apply in the commercial-speech context, *Cent. Hudson*, 447 U.S. at 564 n.6.

PHE's reliance on *Carey*, PHE Br. at 30, is also unavailing. In *Carey*, the State asserted only a single weak interest—in prohibiting advertisements that it considered "offensive and embarrassing," 431 U.S. at 701—and the Supreme Court confirmed that the activity to which the advertising related was not only "entirely legal" but indeed "constitutionally protected," *id.*  Here, the State's multiple interests are substantially stronger than those advanced in *Carey*, and the underlying activity is neither lawful nor constitutionally protected. Furthermore, one of the *Carey* Court's premises that PHE itself recognizes—that obscenity was not involved, 431 U.S. at 701—is at best a dubious conclusion in this challenge to the Texas obscene-device statute, *see supra* at 16-17.

PHE's argument also wrongly assumes that the State's only interest is in preventing the lawful *use* of obscene devices. PHE Br. at 31, 33, 35. Again, the conduct underlying PHE's commercial speech is necessarily the *sale* of obscene devices, not their use. The State's interests in prohibiting the commercial sale of sex and protecting minors from obscene-device advertisement each go to *sale*, and the statute does not prohibit noncommercial speech about any *uses* of obscene devices. Accordingly, the authorities that PHE cites in support of its argument on this point,

43

PHE Br. at 31—one concerning a law that treated different types of speakers differently, *Greater New Orleans*, 527 U.S. at 193-94, and the other a mere plurality opinion, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 512 (1996)—are unhelpful.

Finally, PHE improperly attempts to show that the State's interests are not substantial by asserting that the State must produce evidence in order to satisfy this prong of the analysis. PHE Br. at 33-34. But the citations that PHE provides go to the <u>next</u> *Central Hudson* prong, which tests whether a restriction on commercial speech serves a substantial government interest—an inquiry that only *sometimes* requires evidence. *Id.* (citing *Greater New Orleans*, 527 U.S. at 188; *Edenfield v. Fane*, 507 U.S. 761, 770-771 (1993); *Bailey v. Morales*, 190 F.3d 320, 323-24 (5th Cir. 1999)); *see infra* Part III.B.2. These authorities are thus irrelevant to the substantial-interest inquiry.

## 2. The statute directly advances the State's interests.

The third *Central Hudson* inquiry is whether the challenged regulation "directly advances the governmental interest asserted." 447 U.S. at 566. To pass this stage of the analysis, the government must show that its advertising restriction "'will in fact alleviate . . . to a material degree' the harms identified above." *MD II*, 28 F.3d at 496 (quoting *Edenfield*, 507 U.S. at 771).

44

Satisfaction of this element does not necessarily require the presentation of evidence. The test will be met where it is clear from common sense alone that the restriction on commercial speech directly advances the asserted interest. *Fla. Bar*, 515 U.S. at 628 (further noting that "[n]othing in *Edenfield*, a case in which the State offered *no* evidence or anecdotes in support of its restriction, requires more"); *White Buffalo*, 420 F.3d at 375 (finding the test satisfied without reference to evidence); *see also Edge Broad.*, 509 U.S. at 427-28 (concluding that restriction on casino advertising satisfied the third *Central Hudson* prong based only on the government's "commonsense judgment" and information that it "surely knew"); *Posadas de P.R.*, 478 U.S. at 341-42 (reaching the same conclusion based only on evidence that Puerto Rico had historically outlawed casino gambling); *Dunagin*, 718 F.2d at 748 n.8 (noting that evidence is often unnecessary at this stage of *Central Hudson* analysis).[19]

Accordingly, although PHE bills this portion of the test as especially difficult, PHE Br. at 36, that characterization is inaccurate where, as here, it is intuitively obvious that the challenged regulation will effectively serve the government's asserted interests. *Fla. Bar*, 515 U.S. at 628; *Edge Broad.*, 509 U.S. at 427-28;

---

19. PHE cites *Bailey v. Morales*, 190 F.3d 320 (5th Cir. 1999), as precluding reliance on common sense, PHE Br. at 34. But the *Bailey* Court quoted part of *Florida Bar*'s contrary language noted above, 190 F.3d at 323 (quoting *Fla. Bar*, 515 U.S. at 628), and it specifically noted that, when the government does not rely on evidence, it may nevertheless succeed if its argument for advancement of interests is plausible, *id.* at 324.

*Posadas de P.R.*, 478 U.S. at 341-42; *see also Cent. Hudson*, 447 U.S. at 569 (finding, without reference to any evidence, "an immediate connection between advertising and demand for electricity"—and thus a direct link between the ban on advertising and the government interest); *Cramer*, 931 F.2d at 1034 (requiring no evidence to confirm that a restriction on advertising the use of one airport directly advanced the government interest in encouraging use of a different airport in the same region).

In *MD II*, the Court properly rejected the tenuous argument that a city's mere prohibition of the phrase "gentleman's club" in advertisements of sexually oriented businesses would help combat the increased crime and decreased property values associated with sexually oriented businesses themselves. 28 F.3d at 496. In this case, by contrast, it could not plausibly be argued that the statute's prohibition on the advertisement of obscene-device sales (and obscene-device sales themselves) does not further the State's interest in prohibiting the commercial sale of sex. It is likewise common sense that the statute will directly advance the State's interests in protecting minors and discouraging prurient interests in sexual gratification by reducing public advertisement of obscene devices and making it more difficult for people without legitimate medical or psychological needs to obtain such devices. Accordingly, the statute survives the third *Central Hudson* prong.

46

### 3.    The statute serves the State's interests no more extensively than necessary.

Under the final *Central Hudson* prong, the challenged restriction on speech must be no more extensive than necessary to serve the government's interests. 447 U.S. at 566. Under this standard, the government "is not required to employ the least restrictive means conceivable, but it must demonstrate narrow tailoring of the challenged regulation to the asserted interest—'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'" *Greater New Orleans*, 527 U.S. at 188 (quoting *Fox*, 492 U.S. at 480 (internal quotation marks omitted)).

The tailoring *Central Hudson* requires is appreciably less burdensome than that required under strict scrutiny. *Fla. Bar*, 515 U.S. at 632; *Edge Broad.*, 509 U.S. at 429.    Indeed, the Supreme Court has emphasized that, in light of the reduced protection accorded to commercial speech, legislators have significant latitude in devising restrictions intended to serve their interests. *Fox*, 492 U.S. at 479-481. Accordingly, it should not be surprising that "almost all of the restrictions disallowed under *Central Hudson*'s fourth prong have been substantially excessive." *Id*. at 479.

The focus of this final-stage analysis is not the extent to which the commercial-speech restriction furthers the government interests in any particular case, but rather the relation that the restriction bears to the general problem that the government

47

addresses. *Edge Broad.*, 509 U.S. at 430-31. Applying this test in *Edge Broadcasting*, the Supreme Court concluded that the challenged statutes were sufficiently tailored even though they restricted a significant amount of commercial speech reaching citizens to whom the asserted interest was inapplicable. 509 U.S. at 429-430.

Similar to the statutes at issue in *Edge Broadcasting*, 509 U.S. at 429-430, the Texas obscene-device statute advances the government interests in prohibiting commerce in obscene devices for illegitimate purposes while not interfering with either the advertisement or sale of obscene devices for use in treating legitimate medical or psychological needs. The Texas statute is also not as restrictive as the statutes addressed in *Edge Broadcasting*. Indeed, it is possible that some permissible advertisement of obscene devices for medical or psychiatric purposes could mistakenly be viewed by minors or those who do not legitimately need them. *See* Tex. Pen. Code §43.23(g); PHE Br. at 39 (conceding that the statute's affirmative defense "relat[es] to advertising"—and thus does not forbid commercial speech relating to obscene-device sales permitted under §43.23(g)).[20]

---

20. Despite this concession, PHE persists in its assertion that "[t]he statute restricts truthful advertising about lawful uses." PHE Br. at 38. As already shown, this and PHE's related assertions, *id.* at 38-39, are erroneous. For example, *American Civil Liberties Union* discusses only narrow tailoring under strict scrutiny; the affirmative defense at issue in *Cobb County* is different in kind from §43.23(g); and the Court's unsurprising conclusion that the statutory term "vulnerable to undue

Appellants cannot legitimately fault the statute for erring on the side of respect for speech, rather than maximization of the State's interests. *See Edge Broad.*, 509 U.S. at 433 (rejecting the argument that, in order to pass the final stage of *Central Hudson* analysis, the challenged statute would have to be effective in shielding all citizens to whom the government interest applied from the statutorily restricted expression). And contrary to PHE's argument otherwise, PHE Br. at 41, any less restrictive alternative would fail to adequately serve the State's interests in discouraging recreational use of obscene devices, protecting minors, and prohibiting the commercial sale of sex.

Even if Appellants can show that the fit between the statute's restrictions and the State's interests is imperfect, they cannot show that it is unreasonable, and the statute is thus sufficiently tailored under *Central Hudson*. *Fox*, 492 U.S. at 480; *Greater New Orleans*, 527 U.S. at 188. Its incomplete prohibition of obscene-device advertising is fundamentally unlike any of the restrictions at issue in the cited cases that actually address this stage of the analysis. PHE Br. at 40 (citing a number of cases involving restrictions that curtailed far more speech than necessary to serve the government's interests); *cf. also Cent. Hudson*, 447 U.S. at 558-59, 570 (invalidating

---

influence" was impermissibly uncertain, *Speaks*, 445 F.3d at 401-02, does not support the same conclusion with respect to §43.23(g). *See supra* at 34-35, 36-37. Just as they fail to support Appellants' other arguments, none of these assertions help PHE show that the statute is insufficiently tailored under *Central Hudson*.

New York's *complete* ban on the advertisement of energy use in the name of conservation because it prevented the advertisement of even energy-efficient products); *Cobb County*, 285 F.3d at 1324 (concluding that "less onerous restrictions adequately would serve Georgia's interest" in promoting public morality, where advertising ban extended to obscene devices that could be lawfully sold); *see also Cramer*, 931 F.2d at 1034-35 (noting that, in the absence of the advertising restrictions at issue there, only *more extensive* restrictions would serve the government's interest).

In short, the statute's inclusion of §43.23(g) reflects careful calculation of the costs and benefits of its limited restriction on speech. *See Posadas de P.R.*, 478 U.S. at 343-44 (concluding that the challenged restriction on casino advertising was sufficiently tailored because a narrowing construction "ensure[d] that the restrictions will not affect advertising of casino gambling aimed at tourists, but will apply only to such advertising when aimed at the residents of Puerto Rico"). Accordingly, even if Appellants can satisfy the threshold *Central Hudson* requirement of showing that their commercial speech relates to lawful activity, the statute passes the remaining three elements of the test, and Appellants remain unable to state a First Amendment claim.

IV. **THE COURT SHOULD EITHER REFUSE TO CONSIDER OR REJECT RELIABLE CONSULTANTS' PROCEDURAL-DUE-PROCESS AND STATE CONSTITUTIONAL CLAIMS AS A MATTER OF LAW.**

A. **Appellants Have Waived Their Remaining Claims by Failing to Adequately Brief Them.**

In this Circuit, inadequately briefed arguments are deemed waived. *Thames*, 214 F.3d at 611 n.3. An opening brief is inadequate if it fails to cite legal authorities supporting a discernable argument, FED. R. APP. P. 28(a)(9)(A); *L&A Contracting*, 17 F.3d at 113, and a party may not avoid waiver by citing relevant authorities or portions of the record for the first time in its reply brief on appeal, *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005).

PHE offers no briefing in support of either a procedural-due-process argument or a claimed violation of the Texas Constitution. And while Reliable Consultants identifies those arguments as being at issue in this appeal, RC Br. at 1, it does not adequately brief them. The portion of Reliable Consultants's brief devoted to procedural due process merely recites facts about the magistrate judge's treatment of this issue below; it does not cite authorities suggesting that Appellants have a viable procedural-due-process claim. *Id.* at 14-16.[21] Similarly, Reliable Consultant's single-

---

21. Reliable Consultants's brief might be liberally construed to suggest that certain facts alleged in its complaint should have precluded dismissal of its procedural-due-process claim. But because Reliable Consultants points the Court to no alleged facts in support of such an argument, the Court should deem the argument waived. FED. R. APP. P. 28(a)(9)(A).

paragraph argument regarding the Texas Constitution recites procedural history but cites neither portions of the record nor authorities supporting any claims advanced below. *Id.* at 16-17. These arguments have thus been waived.

### B. Regardless, Appellants' Remaining Claims Fail as a Matter of Law.

#### 1. Appellants' procedural-due-process claim fails because §43.23(f) creates a valid rebuttable presumption.

Texas Penal Code §43.23(f) states: "A person who possesses six or more obscene devices . . . is presumed to possess them with intent to promote the same." In the district court, Reliable Consultants's challenge to this provision was based on the irrebuttable-presumption doctrine, R.23-24, 267—"a strange hybrid of 'procedural' due process and equal protection invented by the Supreme Court in the early 1970s, and laid to rest soon after." *Brennan v. Stewart*, 834 F.2d 1248, 1258 (5th Cir. 1988); *accord Hawkins v. Agric. Mktg. Serv.*, 10 F.3d 1125, 1132 (5th Cir. 1993). Perhaps recognizing this, PHE acknowledged that §43.23(f)'s presumption

52

was rebuttable[22] but nevertheless asserted that the provision violated its Fourteenth Amendment right to procedural due process. R.186-87. This approach also fails.

Rebuttable presumptions violate the Fourteenth Amendment only if there is "no rational connection between the fact proved and the ultimate fact presumed," *Tot v. United States*, 319 U.S. 463, 467 (1943), and the Supreme Court "has never required that a presumption be accurate in every imaginable case." *County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 156 (1979). If "it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend," there is no due-process violation. *Leary v. United States*, 395 U.S. 6, 36 (1969). The focus is on whether the presumed connection is rational based on "common experience" or "the circumstances of life as we know them," *Tot*, 319 U.S. at 467-68. To prevail, a party challenging a rebuttable presumption must demonstrate the presumption's invalidity as applied to him. *County Court of Ulster County*, 442 U.S. at 157.

---

22. Texas courts have correctly held that §43.23(f) is a permissive (*i.e.*, rebuttable) presumption. *Regalado v. Texas*, 872 S.W.2d 7, 11 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd); *see also County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 157 (1979) (noting that a permissive presumption places no burden on the defendant and merely allows, but does not require, the trier of fact to infer one fact from proof of another); *Coberly v. Texas*, 640 S.W.2d 428, 429-430 (Tex. App.—Fort Worth 1982, pet. ref'd) (holding that the trial court erred by not confirming, through jury instruction, that §43.23(f)'s presumption was rebuttable).

There is undoubtedly a rational connection in "common experience," *Tot*, 319 U.S. at 467, between possession of six or more obscene devices and the intent to promote obscene devices. And in reflecting that both Appellants are actively engaged in the retail sale of obscene devices, the record in this case illustrates the actual existence of that connection. R.15, 178.

Although it will surely be true in some cases that a person who possesses six or more obscene devices does *not* intend to promote them, any person so charged will be able to rebut that presumption at trial, and the mere existence of exceptions to a rebuttable presumption does not make the connection it draws irrational. *County Court of Ulster County*, 442 U.S. at 156; *Brennan*, 834 F.2d at 1259. Accordingly, §43.23(f) does not violate the Fourteenth Amendment.

> **2.  Reliable Consultants's commercial-speech and due-process claims under the Texas Constitution fail for the same reasons that their federal constitutional claims fail.**

Reliable Consultants has not alleged or argued that any portion of the Texas Constitution provides more extensive protection than the United States Constitution. Nor would any precedent support such an argument with respect to the claims that Reliable Consultants alleged. Accordingly, even assuming that they have not been waived, Reliable Consultants's challenges under the Texas Constitution fail for the same reasons that Appellants' federal constitutional challenges fail. *See Arrington*

*v. County of Dallas*, 970 F.2d 1441, 1447 (5th Cir. 1992); *Tilton v. Marshall*, 925

S.W.2d 672, 677 n.6 (Tex. 1996); *supra* Parts II-IV.

## CONCLUSION

The Court should affirm the district court's judgment.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

R. TED CRUZ
Solicitor General

_____

BILL L. DAVIS
Assistant Solicitor General
Texas Bar No. 24028280

JAMES C. TODD
Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel: 512/936-1896
Fax: 512/370-9191

*Attorneys for Defendant-Appellee Texas Attorney General Greg Abbott*

56

## CERTIFICATE OF SERVICE

The undersigned counsel of record hereby certifies that two true and correct copies of Texas Attorney General Greg Abbott's Appellee's Brief, along with a computer readable disk copy of the brief, were served via UPS Overnight Delivery, on January 25, 2007, to:

H. Louis Sirkin
Jennifer M. Kinsley
Scott R. Nazzarine
SIRKIN, PINALES, MEZIBOV &
   SCHWARTZ
105 W. 4th Street, Suite 920
Cincinnati, Ohio 45202
*Counsel for Reliable Consultants*

Elaine Agnes Casas
Jennifer Kraber
Assistant District Attorneys
TRAVIS COUNTY ATTORNEY'S OFFICE
314 W. 11th Street, Suite 420
Austin, Texas 78701
*Counsel for Ronnie Earle*

Julie M. Carpenter
Duane C. Pozza
JENNER & BLOCK LLP
601 Thirteenth Street, NW
Suite 1200 South
Washington, DC 20005-3823
*Counsel for PHE*

Counsel also certifies that on January 25, 2007, Texas Attorney General Greg Abbott's Appellee's Brief, along with 7 paper copies of the brief and one computer-readable disk copy of the brief in Adobe Portable Document Format, were dispatched via UPS Overnight Delivery to:

Mr. Charles R. Fulbruge III, Clerk
U.S. Court of Appeals for the Fifth Circuit
600 S. Maestri Place
New Orleans, Louisiana 70130

Bill L. Davis
Attorney of Record for Defendant-Appellee
Texas Attorney General Greg Abbott

57

## CERTIFICATE OF COMPLIANCE

1.   This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because:

     [X]    this brief contains 13,178 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

     [ ]    this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because:

     [X]    this brief has been prepared in a proportionally spaced typeface using *WordPerfect for Windows, version 12* in *Times New Roman 14-point type face*, or

     [ ]    this brief has been prepared in a monospaced typeface using _____ with _____.

_____
Bill L. Davis
Attorney of Record for Defendant-Appellee
Texas Attorney General Greg Abbott

January 25, 2007.

58